SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

STUART PIVAR,

                   Plaintiff,

   -against-

SOTHEBY'S, INC., and
OTTO NAUMANN,

                   Defendants.

------------------------------------------------------------------x

Index No. 158020/2019

Assigned to the Hon.
Joel M. Cohen, IAS Part 3

AMENDED COMPLAINT

Plaintiff Stuart Pivar, by this attorneys, the Law Offices of Mitchell Cantor, 225 Broadway, Suite 1515, New York, NY 10007, complaints of the Defendant as follows:

1. Plaintiff Stuart Pivar (henceforth "Pivar" or "Plaintiff is a natural person residing at 15 West 67th Street, New York, NY 10023.

2. Plaintiff is eighty-nine years old and possesses an extensive, varied and very valuable collection of fine paintings and sculpture including inter alia works by or confidently attributed to Raphael (Raffaello Sanzio), Peter Paul Rubens (henceforth "Rubens"), Rembrandt van Rijn (henceforth "Rembrandt"), Jean-Francois Millet (henceforth "Millet"), Camille Corot (henceforth "Corot"), Georges Braque (henceforth "Braque"), Georges Rouault (henceforth "Rouault"), Pablo Picasso (henceforth "Picasso"), Georgia O'Keefe (henceforth "O'Keefe") and Andy Warhol (henceforth "Warhol").

3. Defendant Sotheby's Inc. (henceforth "Sotheby's or "Defendant") is Delaware corporation with a principal place of business located 1334 York Avenue, New York, NY 10021.

4. Defendant Otto Naumann (henceforth "Naumann") is an employee of Defendant with a principal place of business located at 1334 York Avenue, New York, NY 10021.

5. Defendant is a diverse art and luxury goods retailer known primarily as one of the world's leading auctioneers of fine art, jewelry and other luxury goods.

6. Defendant conducts auctions around the world and maintains salesrooms for the sale of goods at auction in New York, London, Paris and other world capitals.

7. Naumann is former dealer in Old Master paintings, primarily of the Dutch and Flemish 16th and 17th century schools, and is a current expert in Defendant's Old Master Paintings Department.

8. Naumann is a recognized authority on 16th and 17th century Dutch and Flemish paintings amongst collectors, dealers and auction houses and his opinion carries disproportionate weight in the market for such paintings.

9. Plaintiff had numerous business dealings with Defendant for over forty (40) years prior to June 2018 and throughout the course of these dealings Defendant never questioned the authenticity of any works of art offered to Defendant by Plaintiff or sold by Defendant on Plaintiff's behalf.

10. On or about June 2018 Plaintiff commenced discussions with Defendant as represented by its current Chairman, Americas and Executive Vice President Benjamin Doller (henceforth "Doller") with the intention of Plaintiff consigning to Defendant for sale at auction a large number of works for art.

11. Plaintiff identified works by or confidently attributed to, inter alia, Raphael, Rubens, Rembrandt, Millet, Corot, Braque, Rouault, Picasso and Warhol as works of art

Plaintiff wished to consign for auction with Defendant and communicated same to Defendant by email.

12. The works of art Plaintiff wished to sell at auction through Defendant had a total fair market value of up to $750,000,000.

13. On information and belief, Defendant refused to sell at auction Plaintiff's painting by or confidently attributed to Rembrandt based on the opinion of Naumann that the painting in question was not by Rembrandt.

14. At no time herein did Naumann ever actually view Plaintiff's painting by or confidently attributed to Rembrandt, study it or attempt to research it.

15. On information and belief Naumann recklessly and with reckless disregard for the truth rejected the authenticity of Plaintiff's Rembrandt and did so on the reasonable belief that doing so would cause Plaintiff financial loss.

16. Defendant adopted Naumann's opinion as to the inauthenticity of Plaintiff's painting by or confidentially attributed to Rembrandt.

17. Naumann's rejection of the authenticity of Plaintiff's painting by or confidently attributed to Rembrandt has made this painting unsaleable since the market for paintings by Rembrandt is small and Naumann's opinion carries disproportionate weight in it.

18. Plaintiff consequently suffered and continues to suffer significant financial loss due to Defendant's reckless and unwarranted rejection of the authenticity of Plaintiff's Rembrandt.

19. Notwithstanding Defendant's refusal to accept Plaintiff's consignment of his painting by or confidentially attributed to Rembrandt for sale at auction, Defendant continued

to engage in a dialogue with Plaintiff to evaluate other works of art Plaintiff owned for sale at auction.

20. These works of art included paintings by or confidently attributed to Millet, Picasso, O'Keefe and Warhol, inter alia.

21. On or about November 19, 2018, additional experts employed by Defendant visited Plaintiff's apartment and his storage facility to view and evaluate works of art that Plaintiff wished to consign to Defendant for auction, including works by Millet, Picasso, O'Keefe and Warhol.

22. On November 30, 2018, Defendant's representative Doller viewed Plaintiff's painting by or confidently attributed to O'Keefe and dismissed it as fake without inspecting it or engaging in any research connected to it.

23. On information and belief Defendant recklessly and with reckless disregard for the truth rejected the authenticity of Plaintiff's O'Keefe and did so on the reasonable belief that doing so would cause Plaintiff financial loss.

24. Defendant's rejection of the authenticity of Plaintiff's painting by or confidently attributed to O'Keefe has made this painting unsaleable since the market for paintings by O'Keefe is small and Defendant's opinion carries disproportionate weight in it.

25. Plaintiff consequently suffered and continues to suffer significant financial loss due to Defendant's reckless and unwarranted rejection of the authenticity of Plaintiff's O'Keefe.

26. Defendant agreed only to accept on consignment for sale at auction a limited number of works of art belonging to Plaintiff and provided low estimates for them compared to what such works would otherwise sell for at auction or at retail.

27. Plaintiff ultimately declined to consign any works of art to Plaintiff.

28. Defendant is a world market leader in the sale at auction of fine art and sells at auction hundreds of millions of dollars of fine art and luxury goods every year.

29. Defendant's opinion carries disproportionate weight in the marketplace for the sale of fine art, whether at auction, retail or privately.

30. Defendant's disparagement of Plaintiff's Rembrandt and of Plaintiff's O'Keefe combined with Defendant's refusal to offer for auction many other works belonging to Plaintiff and Defendant's insistence on offering any remaining works belonging to Plaintiff at lower than market value estimates has devalued, disparaged and rendered unsaleable Plaintiff's entire collection.

31. Defendant and Naumann at all times acted recklessly and upon the reasonable belief that their opinion would cause economic loss to Plaintiff.

32. Plaintiff has suffered tremendous economic loss in an amount to be proved at trial but up to $750,000,000.

### AS AND FOR A FIRST CAUSE OF ACTION – TRADE DISPARAGMENT

33. Plaintiff repeats and realleges the allegations set forth in paragraph 1 through 32 as if more fully set forth herein.

34. By reason of the foregoing, Plaintiff has been damaged in an amount to be proved at trial up to $750,000,000.

WHEREFORE, IT IS REQUESTED that this Court grant Plaintiff: (a) recovery against Defendant on the first cause of action in an amount to be determined at trial of up to $750,000,000, legal fees and costs and (b) such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 20, 2020

                                        The Law Offices of Mitchell Cantor

                                        By: _____
                                            Mitchell Cantor
                                        225 Broadway, Suite 1515
                                        New York, NY 10007
                                        (917) 621-6802
                                        mc@mcantorlawoffice.com

                                        *Attorneys for Plaintiff Stuart Pivar*

TO: Olsoff Cahill Cossu LLP
     1285 Avenue of the Americas
     New York, NY 10019
     (646) 812-8209

     *Attorneys for Defendants*