UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/25/22

STUART PIVAR,

                         Plaintiff,

             - against -

THE VAN GOGH MUSEUM,

                         Defendant.

21 Civ. 09362 (LLS)

OPINION & ORDER

Defendant The Van Gogh Museum moves to dismiss plaintiff
Stuart Pivar's claims against it for negligence and breach of
contract relating to the Museum's 2021 analysis of the
authenticity of plaintiff's alleged Van Gogh painting.

Defendant's motion is granted.

## BACKGROUND

The following facts are drawn from the complaint and the
affidavits of the parties.[1]

Plaintiff Stuart Pivar is a New York art collector. Compl.
¶ 3. Defendant the Van Gogh Museum (the "Museum") is located in
Amsterdam, Netherlands and is home to the world's largest
collection of works by artist Vincent Van Gogh.  Vellekoop Decl.
¶ 3. The Museum is engaged in authenticity research and provides
its opinion on authenticity to art owners around the world free
of charge. Id. ¶¶ 4-5.

---

[1] In deciding a motion to dismiss based on a forum selection clause, the Court
may consider evidence outside the pleadings, including supporting
declarations and affidavits. See Valenti v. Norwegian Cruise Line, No. 04
CIV. 8895 (RWS), 2005 WL 927167, at *1 (S.D.N.Y. Apr. 21, 2005). It may
resolve a disputed fact in a manner adverse to the plaintiff only after an
evidentiary hearing. See Lurie v. Norwegian Cruise Lines, Ltd., 305 F.Supp.2d
352, 357 (S.D.N.Y.2004)

-1-

In March of 2021, Mr. Pivar acquired what he believed to be an authentic Van Gogh painting titled *Auvers*, *1890*. Compl. ¶ 3. Following the acquisition, Mr. Pivar contacted the Museum to notify it of his ownership. In his first email, he explained that the recent discovery left "little time to show you [the Museum] our conclusions". Vellekoop Decl. ¶ 9, Ex. 2. The Museum responded, explaining that the *Auvers* painting was unknown in the Van Gogh literature, but invited plaintiff to apply officially for an authentication request when the Museum reopened (it was closed due to COVID-19). Id. ¶ 10, Ex. 3. Plaintiff responded, stating "We apprised the Van Gogh Museum of the discovery of this picture as the appropriate measure in due course merely for the edification of its existence. We do not seek the opinion of the Museum as to the authenticity of the picture. We have conducted and published our own investigations on this unique work for art and have found no evidence to contradict its authenticity." Id. ¶ 11, Ex. 4.

In mid-May, following those initial communications, Mr. Pivar again wrote to the Museum, thanking it for "the opportunity to present *Auvers*" and stating that he would arrange to ship the painting to the Museum immediately. Id. ¶ 15, Ex. 8. He followed up the same day stating, "We had made the presumption that you wish to inspect *Auvers, 1890*. Please tell us if indeed you wish the painting to be shipped." Id. ¶ 16, Ex. 9. The next day, the Museum wrote back, informing Mr. Pivar that

-2-

while the Museum is still closed due to COVID-19 and therefore
unable to do authentication requests, it had decided to make an
exception and would work on providing an opinion for the *Auvers,
1890* once Mr. Pivar signed and returned the attached
Authentication Request agreement. Id. ¶ 17. Ex. 10. That
Authentication Request also incorporated the Museum's General
Terms and Conditions Researching Authenticity ("Terms and
Conditions"). Id. Those Terms and Conditions were also attached
in the email the Museum sent to Mr. Pivar. Id. Mr. Pivar signed
and returned the Authentication Request (the "Agreement") the
same day.[2] Id. ¶ 18.

The Museum, after reviewing photographic images and general
documentation regarding the painting, conducted its analysis,
and in August of 2021, sent its fifteen-page report to Mr.
Pivar, rejecting the authenticity of the *Auvers* painting. Id. ¶
20, Ex. 16. The report notes that the Museum "did not believe an
inspection *in situ* in our museum is necessary" because it was
clear from the material presented that the painting could not be
attributed to van Gogh. Id. ¶ 20, Ex. 6.

Mr. Pivar now claims that the Museum's inspection was

_____

[2]The signed agreement attached as Exhibit A to Mr. Pivar's complaint differs
slightly from the version the Museum attaches to the Vellekoop Declaration.
Along with some other minor discrepancies in the description and title of the
painting, Exhibit A is signed and dated June 1, 2021, while the Museum's copy
is signed and dated May 14, 2021. The Museum states that it reviewed its files
and can find no record that it ever received the version of the document Mr.
Pivar included with his complaint. Vellekoop Decl. ¶ 18. Mr. Pivar does not
address the issue. The discrepancy is noted but is insignificant for the
purposes of this motion.

performed negligently and in breach of paragraph 3.1 of the Terms and Conditions, requiring the Museum to exercise "the due care expected of a good contracting party". Compl. ¶¶ 12-27. Mr. Pivar alleges that had the painting been certified as authentic by the Museum, it would have a present market value of $300,000,000. Id. ¶ 8. Now that it's been rejected, it only has a nominal or decorative value. Id. ¶ 10.

## DISCUSSION

Defendant seeks to dismiss plaintiff's claims under the doctrine of forum non conveniens in light of the forum selection clause in the parties' agreement. See Df. Br. at 8, Vellekoop Decl. ¶ 17, Ex. 10 at ¶ 11.2.  The clause provides that "any disputes in the matter of or arising from or related to these Terms and Conditions or the contractual and extracontractual obligations arising therefrom or related thereto will solely be submitted for settlement to the competent court in Amsterdam." Id.

"The appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60 (2013). "A forum selection clause is presumptively enforceable if it was reasonably communicated to the party resisting enforcement, has mandatory force, and covers the claims and parties involved in the dispute." DeBello v. VolumeCocomo Apparel, Inc., 720 F.

-4-

App'x 37, 39 (2d Cir. 2017)(citing Phillips v. Audio Active
Ltd., 494 F.3d 378, 383 (2d Cir. 2007)(quotation marks omitted).
"A party can rebut the presumption by demonstrating that
enforcement of the clause would be unreasonable or unjust, or
that the clause was invalid for such reasons as fraud or
overreaching.". Id. ("We decline to enforce a forum selection
clause if: (1) its incorporation was the result of fraud or
overreaching; (2) the law to be applied in the selected forum is
fundamentally unfair; (3) enforcement contravenes a strong
public policy of the forum in which suit is brought; or (4)
trial in the selected forum will be so difficult and
inconvenient that the plaintiff effectively will be deprived of
his day in court.") (internal citations and quotation marks
omitted).

        Plaintiff challenges the forum selection clause's
enforceability based on the Agreement's allegedly adhesive and
unconscionable nature.[3] Plaintiff argues that since the Terms and

---

[3] While not entirely clear from its brief, plaintiff's arguments of adhesion
and unconscionability appear to challenge both whether the clause was
reasonably communicated and whether it is unjust, unfair or otherwise invalid
for fraud or overreaching.

Plaintiff does not dispute that the clause is mandatory, nor does he dispute
that it applies to both the parties and claims in this suit. Applying Dutch
law to those factors, as required by the agreement and this Court's
jurisprudence, the Court finds that defendant has satisfied its burden of
proving that the clause is mandatory and applies to the parties and claims in
this case. See Df. Br. at 11-14; Vellekoop Decl., Ex. 10, Terms and
Conditions at ¶ 11.1 ("These Terms and Conditions . . . are governed by Dutch
law".); see also Amto, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556,
564 (S.D.N.Y. 2016)("Where a contract contains a choice of law clause in
addition to a forum selection clause, the court generally must apply the law
selected in the choice of law clause to the interpretive questions posed by
parts two and three of the four-part framework, while applying federal law to

Conditions containing the clause were incorporated by reference into the form Agreement, the forum selection clause was imposed upon a "aged plaintiff with reduced understanding" without free negotiation. See Pl. Opp'n. Br. at 5.

Mr. Pivar states that he did not recall receiving the Terms or ever reading the Terms. See Pivar Affidavit at ¶¶ 5, 6. He argues that because they were not "discussed nor contained in the actual agreement which plaintiff executed", the agreement was a "classic contract of adhesion between two parties with vastly disproportionate bargaining power". See Pl. Opp'n Br. at 5-6. He also argues that the forum selection clause is unenforceable because it is procedurally and substantively unconscionable, since "defendant had no competition whatsoever in the authentication of works of art attributed to Vincent Van Gogh and plaintiff had no leverage whatsoever" and "the choice of law and forum provisions in defendant's agreement require plaintiff to consent to litigation in a foreign country under a foreign law which is not even akin to the Anglo American system of jurisprudence but derived from unrelated sources." Pl. Opp'n. Br. at 8. Basically, plaintiff's argument is that since he is "an elderly New York desperately hopeful that his painting may turn out to be a wildly valuable work by Vincent Van Gogh" who "hardly even leaves his apartment", he was never "consciously

determine whether the clause is enforceable. . . ." (internal citation and quotation marks omitted).

-6-

cognizant" of the clause, and therefore, it cannot be enforceable. Pl. Opp'n Br. at 6.

Despite plaintiff's argument, defendant satisfies its burden of showing that the forum selection clause was reasonably communicated to Mr. Pivar, and Mr. Pivar cannot show that the contract is one of adhesion or unconscionable.[4]

First, the General Terms and Conditions were provided to Plaintiff at the same time and in the same email as the Authentication Request, which plaintiff signed. The Authentication Request is only one page, and explicitly references the Terms and Conditions twice in this first two paragraphs ("Your request is subject to our General Terms and Conditions . . . These documents are attached with this request. By signing this document, you acknowledge you are familiar with and consent to the General Terms and Conditions . . ."). See Vellekoop Decl., Ex. 10. The forum selection clause itself is in English and is clearly stated. Upon receipt of the Agreement, a Ms. Maggie Dubinski (someone arguably working on behalf of plaintiff and whose email Mr. Pivar had previously used to communicate with the Museum, see Vellekoop Decl., Ex. 8), acknowledged receipt of the Museum's "email and information

_____

[4] It is not lost on the Court that plaintiff seeks to avoid enforcement of one unfavorable provision in the Terms and Conditions, claiming he was not conscious of the Terms and was forced to sign the Agreement, while simultaneously seeks relief under the other provisions, which were presented to plaintiff in the same manner, at the same time, and as part of the same short, form, unnegotiated agreement.

-7-

guides" and sent back the attached Authentication Request containing Mr. Pivar's signature. Id., Ex. 11.

Those facts are sufficient to show that the clause was reasonably communicated to plaintiff. See Bent v. Zounds Hearing Franchising, LLC, No. 15 CIV. 6555 (PAE), 2015 WL 7721838, at *4 (S.D.N.Y. Nov. 30, 2015)("In this Circuit, courts assume that a forum-selection clause stated in clear and unambiguous language was reasonably communicated to the plaintiff."); see also Cfirstclass Corp. v. Silverjet PLC, 560 F. Supp. 2d 324, 328 (S.D.N.Y. 2008) ("Here, there is no dispute that Cfirstclass was aware that the two contracts contained the forum selection clauses at issue since Cfirstclass was a party to each contract.").

Since defendant establishes the presumption of enforceability, the Court next analyzes whether plaintiff's arguments of adhesion and unconscionability are sufficient to rebut that presumption.

"A contract of adhesion contains terms that are unfair and nonnegotiable and arises from a disparity of bargaining power or oppressive tactics." Molino v. Sagamore, 105 A.D.3d 922, 923, 963 N.Y.S.2d 355, 357 (2013)(internal quotation marks and citation omitted). "[A] form agreement . . . is not automatically one of adhesion because such claims are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and

-8-

whether there is inequality of bargaining power between the parties." Id. (internal quotation marks and citation omitted).

Here, while the contract was indeed a form agreement, the fact that the parties did not negotiate the terms of the agreement does not render it unenforceable. See Molino, 105 A.D.3d at 923 ("[T]he fact that the Rental Agreement containing the forum selection clause was presented to the plaintiffs at registration and was not the product of negotiation does not render it unenforceable."); see also Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 359 (S.D.N.Y. 2014)("Failure to negotiate the terms of an agreement ... does not constitute fraud, overreaching or unconscionability necessary to void a forum selection clause.") (internal quotation marks and citation omitted); Leasing Serv. Corp. v. Larkan, No. 84 CIV. 6445 (JFK), 1986 WL 9691, at *4 (S.D.N.Y. Aug. 25, 1986) ("Larkan's failure to read the terms of the agreement into which he freely entered . . . is not evidence of fraud or overreaching by plaintiff."). Plaintiff presents no evidence that the Museum included any deceptive language in the contract or used high pressure tactics to force Mr. Pivar into the agreement; on the contrary, the facts suggest that the Museum had very little interest in securing the agreement, considering it did not receive, nor seek, any payment for its services, and while it was Mr. Pivar who repeatedly contacted the Museum regarding the *Auvers* painting, despite the Museum's notification that it was not

performing authentication work due to the pandemic. The contract is not one of adhesion.

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable, i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Warburg, Pincus Equity Partners, LP v. Keane, 22 A.D.3d 321, 322 (1st Dept. 2005)(internal citation and quotation marks omitted).

The evidence does not show that the forum selection clause was procedurally unconscionable: Mr. Pivar had a meaningful choice in signing the Agreement to obtain the Museum's opinion on the authenticity of the *Auvers*. In correspondences with the Museum, Mr. Pivar notes that he has already conducted and published his own investigation of the work, and the piece was already due to be presented at the Nassau County Museum of Art. See Vellekoop Decl., Exs. 2, 4. Mr. Pivar did not need to enter into an agreement with the Museum, and the Museum had no need to force Mr. Pivar into such an agreement.

Nor does Mr. Pivar show any substantive unconscionability. He does not argue that Dutch law is unfair or that enforcement of the forum selection clause would contravene public policy or deprive him of his day in court. While plaintiff cites his old age and general frailness, those facts alone are insufficient to

-10-

deem such a clause unreasonable. See Ferketich v. Carnival Cruise Lines, No. 02-CV-3019, 2002 WL 31371977, at *5 (E.D. Pa. Oct.17, 2002) (holding that 75-year-old plaintiff's difficulty in traveling due to advanced age and lack of mobility did not establish that transfer would deprive her of her day in court); Miller v. Regency Mar. Corp., 824 F.Supp. 200, 202-03 (N.D.Fla.1992) (holding that a letter from plaintiff's doctor stating her inability to travel to chosen forum, even if taken as true, did not render enforcing the forum-selection clause unreasonable); see also Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 11 (2d Cir. 1995)("A plaintiff may have his 'day in court' without ever setting foot in a courtroom. . . . If this were not so, gravely injured and incapacitated plaintiffs might not be able to recover for their injuries.") (internal citations omitted).

The parties' forum selection cause is enforceable, and the action should be brought in the contractually agreed upon forum.

## CONCLUSION

Defendant's motion to dismiss is granted, and all claims are dismissed without prejudice on grounds of forum non conveniens.

So Ordered.

Dated:    New York, New York
          March 25, 2022

                                    *Louis L. Stanton*
                                    Louis L. Stanton
                                    U.S.D.J.